

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

January 13, 1948

Hon. S. C. McIntosh, Director
Gas Utilities Division
Railroad Commission
Austin, Texas

Opinion No. V-476

Re: Application of Article
6060, Vernon's Civil
Statutes, to a company
transporting gas from
Texas into Mexico.

Dear Sir:

     This is in further reference to the request contained in your letter of December 16, 1947, for the opinion of this office whether the gross income tax levied by Article 6060, Vernon's Civil Statutes, applies to the operations of Reynosa Pipe Line Company.

     From your letter and other information we are advised that the Reynosa Pipe Line Company is a corporation organized under the laws of the State of Texas, with its principal place of business at Corpus Christi, Texas, and is a wholly-owned subsidiary of La Gloria Corporation, another Texas corporation. Under an authorization issued by the Federal Power Commission, pursuant to the provisions of the Natural Gas Act (52 Stat. 831; 15 U.S.C.A. § 717-717w, incl.), Reynosa is delivering to a Mexican corporation at the International Border approximately 20,000 MCF of natural gas per day. This natural gas is purchased by Reynosa from its parent, La Gloria, from reserves in Hidalgo County, Texas, and is transported by Reynosa through its pipe line system approximately 17 miles to the Rio Grande River.

     Reynosa makes no sales or deliveries in this State, but, according to a letter from Reynosa accompanying your request, sells to the Mexican company "at the point where the pipe line facilities constructed by Reynosa across and under the Rio Grande River cross the international boundary of the United States of America and the Republic of Mexico."

Article 6060 reads as follows:

"Every gas utility subject to the pro-
visions of this subdivision on or before the
first day of January and quarterly there-
after, shall file with the Commission a state-
ment, duly verified as true and correct by
the president, treasurer or general manager
if a company or corporation, or by the owner
or one of them if an individual or co-part-
nership, showing the gross receipts of such
utility for the quarter next preceding or
for such portion of said quarterly period as
such utility may have been conducting any
business, and at such time shall pay into
the State Treasury at Austin a sum equal to
one-fourth of one per cent of the gross in-
come received from all business done by it
within this State during said quarter." (Em-
phasis Supplied)

Section 10 of Chapter 73 of the Acts of the
42nd Legislature, 1931, reads as follows:

"That Article 6060 of the Revised Civil
Statutes of 1925, except insofar as it im-
poses a license fee or tax of one-fourth of
one per cent against persons owning, oper-
ating, or managing pipe lines, as provided
in section 2 of Article 6050, is hereby re-
pealed and said fund shall be used for en-
forcing the provisions of Articles 6050 to
6060, inclusive."

Section 2 of Article 6050, referred to, limits
the tax to those,

"Owning or operating or managing a pipe
line for the transportation or carriage of
natural gas, whether for public hire or not,
if any part of the right of way for said line
has been acquired, or may hereafter be ac-
quired by the exercise of the right of emi-
nent domain; or if said line or any part
thereof is laid upon, over or under any pub-
lic road or highway of this State, or street
or alley of any municipality, or the right of
way of any railroad or other public utility;

including also any natural gas utility author-
ized by law to exercise the right of eminent
domain."

See Thompson v. United Gas Corporation, 190
S. W. (2d) 504 (Tex. Civ. App. 1945), writ refused.

It will be noted that the tax levied by Ar-
ticle 6060 is based upon a percentage "of the gross in-
come received from all business done by it within this
State during said quarter." Thus the question to be
determined is whether a pipe line company transporting
natural gas in Texas to the United States' border, mak-
ing sales exclusively at that point, is taxable under
the Act, as "business done by (the company) within this
State. . . ." Undoubtedly, the sales by the company
are sales in foreign commerce. For example of a simi-
lar situation held to be interstate and not intrastate
commerce, see Interstate Natural Gas Company v. Federal
Power Commission (U. S. S. Ct. 1947), 91 L. Ed. 1355.

In an analogous case arising under Article
7084, Vernon's Civil Statutes, it was held that ship-
ments of crude oil originating in Texas destined to
points outside the State but transported to seaboard
in Texas and loaded on ships in Texas ports did not
amount to "business done in Texas" under the statute
providing for a franchise tax based on the gross re-
ceipts of such business. See Clark v. Atlantic Pipe
Line Company, 134 S. W. (2d) 322 (Tex. Civ. App. 1939),
writ refused, wherein Chief Justice McClendon said:

"We hold that the language 'business
done in Texas,' as employed in this statute
was intended to mean business begun and com-
pleted in Texas, and not business begun in
Texas and completed in some other state or
foreign nation, or vice versa. In other
words, that it means intrastate business."

See also Flowers v. Pan American Refining Cor-
poration, 154 S. W. (2d) 982, writ refused; and Lawson
v. Petroleum Nav. Co., 170 S. W. (2d) 571.

The holdings in these cases are based in part
upon Houston B. & T. Ry. Co. v. State, 108 Tex. 314, 192
S. W. 1054, and like cases by the United States Supreme
Court, to the effect that a state gross receipts tax on
receipts from interstate and foreign commerce is uncon-
stitutional.

Your attention is also invited to East Ohio Gas Company v. Tax Commission of Ohio, et al, 283 U. S. 465, 51 S. Ct. 499, wherein the court held that:

"The transportation of gas from wells outside Ohio by the lines of the producing companies to the state line and thence by means of appellant's high pressure transmission lines to their connection with its local systems is essentially national--not local--in character and is interstate commerce within as well as without that state. The mere fact that the title or the custody of the gas passes while it is en route from state to state is not determinative of the question where interstate commerce ends."

In our opinion the activities of Reynosa Pipe Line Company as described in this opinion are not taxable under Article 6060, Vernon's Civil Statutes.

### SUMMARY

A Texas natural gas pipe line company engaged exclusively in purchasing and transporting gas in Texas for sale in foreign commerce is not subject to the gross income tax levied by Article 6060, Vernon's Civil Statutes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By James D. Smullen
Assistant

JDS:jt

APPROVED:

ACTING ATTORNEY GENERAL